Statement of the Case.
MONROE, J.
In June, 1901, the plaintiff married Adele Guillebert, a minor, and he shortly afterwards joined her in an action calling upon her mother to account for the estate inherited from her father, of which the mother was in possession; the grounds relied on being her emancipation by marriage, and the alleged fact that her mother, having contracted a second' marriage, and having failed to record the evidence of the minor’s mortgage against the property of her second husband, had forfeited the tutorship.
The action thus brought was dismissed, this court holding that the minor had married without the consent of the mother, and was not emancipated, and that the issue concerning the alleged failure of the co-tutor to qualify was not presented by the record. Guillebert v. Grenier, 107 La. 614, 32 South. 238.
In the present suit the plaintiff alleges that his wife’s mother and the husband of the latter did not in fact cause the inscription to be made for the protection of the minor, as required by Civ. Code, art. 255, and that' the tutorship was ipso facto forfeited, but that, notwithstanding such forfeiture, the former tutrix and her said husband remain in possession of the minor’s estate, and that, alleging the death of the undertutor originally appointed, they have obtained an order of court appointing Charles Schwartzenberg undertutor, not in the interest of the minor, but to embarrass her and to aid themselves in keeping her out of her property. He further alleges that the appointment is inoperative, for the reasons that the tutorship was vacant when the appointment was made, and the former tutrix and her husband were unauthorized to ask it, and that a tutor and undertutor should now be appointed. He therefore prays that he be appointed tutor ad hoc for the purpose of the suit; that Charles Schwartzenberg, Marie Genier, wife of Alfred J. Mayer (the alleged former tutrix), and Alfred J. Mayer, her husband, be cited; and that there be judgment setting aside the appointment of said Schwartzenberg as undertutor, appointing another in his stead, and ordering the convocation of a family meeting to advise with reference to the appointment of a tutor. Agreeably to the prayer of the petition, the plaintiff was appointed tutor ad hoc, and, the citations having been served, the defendants excepted — that the minor has a tutor, co-tutor, and undertutor, regularly appointed; that the appointment of the plaintiff as tutor ad hoc was unauthorized, and should be set aside; and that the plaintiff has no standing in court, and no right to prosecute this suit. This exception having been overruled, the mother and stepfather answered, affirming that they are the legal incumbents of the tutorship, denying the right of the plaintiff to question their title collaterally, and pleading the allegations made by him in the suit previously brought as an estoppel. They further allege *470 that the undertutor was regularly appointed, and .should not he removed; that they have always provided for the minor, and will continue to do so; and that this suit is malicious, and should be dismissed. The defendant Schwartzenberg also answered, denying that he was appointed to further the interests of his eodefendants or to embarrass the minor, and alleging that the estate of the latter is being honestly administered.
It is admitted that all the formalities required by law were observed in the original confirmation of the natural tutrix and appointment of the undertutor, upon the death of the minor’s father; that prior to her second marriage the tutrix caused a family meeting to be convened, which decided that she be retained in the tutorship; that said proceedings were homologated by judgment of the court, and that her husband, Alfred J. Mayer, thereafter became the “co-tutor, under the law”; that the evidence of the mortgage in favor of the minor and against her stepfather was not recorded previously to the homologation of the proceedings of the family meeting, but was recorded upon August 22, 1901; that the undertutor originally appointed died, and that Schwartzenberg was appointed in his place, upon the application of Mr. and Mrs. Mayer, without notice to the plaintiff or his wife, and has taken the oath required by law; and that Mr. and Mrs. Mayer are above the average in point of intelligence and business capacity. It is shown that the estate of the minor has been largely increased under the present administration, and that the minor is abundantly secured. The'plaintiff, in testifying, pays the following tribute to the undertutor whom he is seeking to remove, to wit: “I am very friendly with Mr. Schwartzenberg. I regard him highly as a man, and he is friendly with my wife. I know that my wife calls his wife cousin.”
Opinion.
It will be observed that this suit has a twofold purpose, viz., to remove the under-tutor and have another appointed, and, proceeding upon the assumption that the tutorship is vacant, to have provision made to fill the vacancy.
The grounds relied on for the removal of the undertutor are (1) that his appointment was secured, not for the benefit of the minor, but to further the interest of her mother and stepfather, claiming the tutorship; and (2) that the appointment is inoperative, because made at a time when the tutorship was vacant, and at the instance of persons who were unauthorized to ask it.
No evidence was offered in support of the first ground, but, on the contrary, it was affirmatively shown to have no support in fact. And the second ground finds no support in lhw. Assuming, arguendo, that there was a vacancy in the tutorship, that circumstance abolished neither the office of tutor nor that of undertutor, and it is plain that there may be an undertutor, though there be no tutor. In fact, one of the purposes of the law in providing an undertutor for the minor is that he may act when there is no tutor, may cause one to be appointed, and may in some cases approve the proceedings of the family meeting by which such appointment is recommended. Civ. Code, art. 276, 279; Succession of Marinovich, 105 La. 110, 29 South. 500; Succession of Fried, 106 La. 276, 30 South. 839.
There is no question in this case as to the jurisdiction of the court by which the under-tutor was appointed, and it is immaterial by whom ■ such appointment was suggested. This being the case, there being an under-tutor legally appointed and competent to act, the law imposes upon him the duty of taking such steps, under the direction of the court, as may be necessary, in the interest of the minor, either to remove the tutor or to have one appointed; and, in the absence of allegation or proof that he has failed so to do (even assuming that such action could then be taken), the district court is without authority to appoint a tutor ad hoc to discharge that duty. Welch v. Baxter, 45 La. Ann. 1062, 13 South. 629. It follows, therefore, that the plaintiff has no standing to invoke the action of the court upon the question of the tutorship. As was said, however, with regard to the appointment of the undertutor, the court had jurisdiction, if there was a vacancy, to direct that the necessary steps should be. taken to fill it; and, as that jurisdiction has been exercised, it becomes necessary to inquire whether the condition exists upon which it depends.
It will be remembered that the tutrix, in *472 ■contemplation of her second marriage, caused a family meeting to be convened, by which it was decided that she should remain in office, and that the proceedings were homologated before the celebration of her second marriage. It is said, however, that the tutorship was ipso facto forfeited because she failed, before the celebration of the marriage, to record, as against her prospective husband, the evidence of the minor’s mortgage; and this view of the matter is predicated on the provisions of Act No. 18, p. 13, of 1882, amending and re-enacting article 255 ■of the Civil Code, and reading as follows:
“When the family meeting shall retain the mother in the tutorship, her second husband becomes, of necessity, the co-tutor, who, for the administration of the property, subsequently to his marriage, becomes bound, in solido, with his wife, and his estate shall be legally mortgaged as a security for that responsibility, from the day of the marriage: provided, the evidence of such mortgage against the said co-tutor be recorded,4 according to the law now regulating the registry •of mortgages against tutors, before the proceedings of the family meeting can be homologated: and provided further, that, if said registry is not so made, then, the tutrix and her husband shall come under the provisions of the preceding article.”
The penalty provided by this act for failure to record the minor’s mortgage, then, is that “the tutrix and her husband shall come under the provisions of the preceding article,” which reads:
“Art. 254. If the mother, who is tutrix to her children, wishes to marry again, she must, previous to the celebration of the marriage, apply to the judge, in order, to have a meeting of the family, for the purpose of deciding whether she shall remain tutrix. If she shall neglect to call such meeting, she shall be, ipso facto, deprived of the tutorship, and, together with her husband, shall be answerable, in solido, for all the consequences of the mal-administration of the tutorship unduly kept by her, and the estate of the husband shall be legally mortgaged as security for that responsibility from the day that the mortgage has been inscribed in the manner required by law.”
We therefore find, upon bringing the tutrix and her husband “under the provisions” of this article,- that the condition upon- which the penalty of forfeiture is incurred is thus stated: “If she shall neglect to call such a meeting.” No doubt, the further condition might have been added, “and to have the proceedings thereof duly homologated”; but it was not, and the courts have no authority to supply it, the more particularly when we consider that, by the language of the law, the family meeting is to be convened “for the purpose of deciding” whether the mother shall retain the tutorship of her children.
This view of the question was somewhat considered in an early case, in which “the defendant denied that the wife had been legally retained in the tutorship on her second marriage.” In overruling this plea, the court, through Judge Martin, said:
“It appears that the plaintiff, before her second marriage, provoked a family meeting, and was maintained by it in the tutorship of her minor daughter, but this court has been unable to find the evidence of the homologation of the proceedings of this family meeting in the record. The Louisiana Code provides that the tutrix shall be deprived of her tutorship, ipso facto, if she marries without having provoked a family meeting to retain her in the tutorship. This is an affirmative pregnant with a negative — that her marriage, after she has provoked a family meeting, does not deprive her of the tutorship. If the family meeting maintains her in the tutorship, and the judge homologates the proceedings, it is clear that her right to the tutorship will not be impaired by the marriage. If the meeting declines to retain her in the office, it is equally clear that this circumstance will authorize her destitution. But perhaps this destitution 'must be pronounced contradictorily, because the law has not said that it shall take place, ipso facto, as in case of neglect to call a family meeting.” Rachal et al. v. Rachal’s Heirs et al., 10 La. 454.
If this be a correct interpretation of the law — and it seems to us to be so — it may be conceded that the homologation of the proceedings of the family meeting in the instant ease was without effect, as having preceded the registry of the minor’s mortgage, in violation of the act of 1882; and yet the tutorship was not forfeited, because, whilst failure to comply with the law in that respect may perhaps be' a sufficient reason for the *474 destitution of the tutrix, in an action brought for that purpose, the law has not said that it will operate such forfeiture, as in case of neglect to convene a family meeting.
Considering the question from another point of view, it will be observed that the act of 1S82 does not provide that in the event of her failure to record the minor’s mortgage the tutrix shall incur the penalties imposed by the preceding article for failure to convoke a family meeting, but it declares that in such case “the tutrix and husband shall come under the provisions of the preceding article,” which language affords no authority for the extension of “the provisions of the preceding .article” to any other eases than those contemplated by them.
In order, however, to meet the view, presented with great force by the learned counsel for the plaintiff, it would be necessary to hold that the tutrix and her husband are not only “under the provisions of the preceding article,” but that they are also still under the act of 1882. In other words, we should be obliged to make up a penalty by combining the two laws, when by the terms of the governing statute the parties are relegated to the exclusive dominion of the one. And this, for the reasons stated, we do not feel at liberty to do.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that the demand of the plaintiff be rejected and this suit dismissed at his cost in both courts.
PEOYOSTY, dissents.